UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

COREY MAPP

        Defendant.

Case No.: 25-20015

Honorable Jonathan J.C. Grey

---

**GOVERNMENT'S SENTENCING MEMORANDUM**

---

Corey Mapp has a violent criminal history and a well-documented problem with authority. In 2012, Mapp fled from officers when they attempted to arrest him after he and a fellow member of Band Crew shot someone for not being in a gang. In September 2024, Mapp fled from officers when they attempted to arrest him for retail fraud. In October 2024, Mapp fled from officers during an ordinary traffic stop. And, in November 2024, Mapp fled from officers to evade arrest for carrying a stolen firearm. He now appears before this Court to be sentenced for carrying a loaded and stolen gun while on federal supervised release for gang membership and firearm related felonies.

The facts of this case are serious. Mapp's decision to commit crime after crime while under court supervision demonstrates a serious lack of respect for the

law. The United States recommends a sentence of 57 months' incarceration followed by a term of supervised release. Such a sentence would be "sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

I.   **Statement of Facts**

On November 25, 2024, Corey Mapp was riding around in a Chevy Malibu with no insurance, carrying a loaded and stolen gun. Officers from the Detroit Police Department tried to stop the Malibu, but the driver fled. For safety, officers did not pursue the Malibu. However, later that night, officers saw the same Malibu driving around the city, driving through stop signs. The officers followed the car until it pulled into a driveway. Officers pulled in behind the Malibu.

When Mapp, a passenger in the Malibu, saw officers, he stashed a loaded handgun behind the front passenger seat. Officers instructed Mapp to stop and get on the ground. Instead, he ran from them. Officers caught up to Mapp, but Mapp continued to resist arrest. Mapp attempted to push away from the officers, causing one of them to fall to the ground. Mapp continually fought with the officers until they were able to handcuff him.

The United States charged Mapp in a one-count indictment in January 2025. PSR ¶ 5. On August 5, 2025, Mapp pleaded guilty to one count of felon in possession of a firearm. PSR ¶ 7.

## II.     Sentencing Guidelines Calculation and Relevant 3553(a) Factors

A. *The guidelines range.*

Although advisory, the Sentencing Guidelines remain an important factor under Section 3553(a) in fashioning an appropriate sentence. In *United States v. Rita*, 551 U.S. 338, 345 (2007), the United States Supreme Court noted "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives."

Mapp pleaded guilty pursuant to a Rule 11 Plea Agreement. The United States Probation Office calculated Mapp's criminal history category to be IV and offense level of 23. PSR ¶ 64. The government concurs with the calculation of the guidelines in the PSR, resulting in a sentencing guideline range of 70 to 87 months. The parties' preliminary calculation of Mapp's guideline range failed to include the criminal history point he was assessed for his 2012 marijuana conviction and anticipated a range of 57–71 months. The government is still asking the Court to accept the parties' Rule 11 plea agreement and sentence Mapp to a term of incarceration not to exceed 57 months.

B. *The nature and circumstances of the offense, and the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1)*

1. Nature and circumstances of the offense.

Mapp's offense—felon in possession of a firearm—inherently involves the possession of a gun, which in and of itself is dangerous. But this was not simple possession of a single firearm by a defendant with one prior dated felony conviction. Mapp has served a cumulative total of more than a decade in prison resulting from his prior gang membership and assaultive and weapons-related felony convictions. He, more than most, knows the risks of carrying a firearm. But undeterred by the threat of criminal consequence, Mapp was carrying a loaded and stolen gun, riding around in a car with someone willing to flee from police at high rates of speed. When police eventually caught up to the car Mapp was in, Mapp stashed his gun and fled from officers. And when those officers caught up with him, Mapp physically resisted and fought against the officers' attempts to handcuff him.

The nature and circumstances of the offense are serious, particularly when viewed in the context of Mapp's history and characteristics.

2. History and characteristics of the defendant.

The history and characteristics of Corey Mapp weigh heavily in favor of a 57-month sentence. Mapp has spent most of his adult life incarcerated because of his decisions to commit serious and violent criminal offenses. And as a result, he

has a limited history of employment. Mapp lost the only job he held after being released from prison for failing to show up to work. PSR ¶ 34. Unfortunately, Mapp's involvement in criminal offenses dominates his history and characteristics.

This case represents Mapp's third felony conviction. His first two felony cases stemmed from violent acts he committed as a member of the violent street gang Band Crew.

On November 17, 2012, Mapp and another member of Band Crew (Alexander Johnson) approached AV-1 and asked if he was Band Crew. When AV-1 told Mapp and Johnson he wasn't in a gang, Johnson shot him in the chest. PSR ¶ 32. Officers investigating the attempted murder located the car Johnson and Mapp were in and tried to effectuate a traffic stop. *Id*. The driver of the car stopped the car and four people—including Mapp and Johnson—got out and fled from police. *Id*. Officers caught up to Mapp and Johnson and placed them under arrest. *Id*. As a result of his conduct, Mapp was convicted of gang membership felonies, assault with intent to go great bodily harm, and felony firearm. *Id*. He was ultimately sentenced to an aggregate term of 6–22 years' incarceration.

In October 2015, Mapp was charged federally for the crimes he took part in on behalf of Band Crew between November 2011 and September 2015. PSR ¶ 34. In that timeframe, Mapp was involved in kidnapping/threatening conduct,

possessing firearms, threatening a witness with a firearm, assaultive behavior including the exchange of gunfire at a gas station, assaultive conduct in which nine rounds were fired at an individual, other armed and unarmed robberies and assaultive behavior at various gas stations, and possessing marijuana with intent to distribute it. PSR ¶ 34.  Because of this conduct, Mapp was convicted of racketeering conspiracy and assault with a dangerous weapon in aid of racketeering. *Id*. In 2017, Mapp was sentenced to 100 months' incarceration, followed by supervised release, on those counts. *Id*. Mapp was released from custody on April 3, 2024. *Id*.

Mapp did not take federal supervised release seriously. Less than six months after getting out of prison, Mapp violated the terms of his supervised release. On September 27, 2024, Mapp and a friend fled from officers after stealing from a Target. PSR ¶ 35.  Mapp was arrested and ultimately convicted of retail fraud. *Id*. While that case was pending, Mapp got into more trouble.

On October 13, 2024, Mapp was the back seat passenger in a vehicle pulled over for a traffic offense. PSR ¶ 34. During the stop, officers saw open liquor botte in the car. *Id*. Mapp instructed the driver to flee from the stop, and they did. *Id*. Mapp was identified later.

On November 25, 2024, Mapp was arrested in this case. And, just like when officers tried to arrest him in 2012, and in September 2024, and in October 2024,

Mapp fled from police. Mapp's history of disrespect for authority is well-documented. His history and characteristics call for a significant custodial sentence.

      C. *The need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, protection of the public, and rehabilitation).*

A sentence of 57 months' imprisonment will reflect the basic aims of sentencing. Such a sentence will provide just punishment and will reflect Mapp's conduct and the fact that this is his second conviction for a felony weapons offense. A sentence of 57 months will also promote respect for the law—something that Mapp seems to be devoid of. And perhaps most importantly, a sentence of that length will provide specific deterrence to Mapp, preventing him from committing further crimes against members of the community.

As it relates to rehabilitation, a 57-month sentence will provide Mapp the opportunity to take advantage of the various rehabilitative programs with the Bureau of Prisons. According to the PSR, the Mapp has a high school diploma but has a limited employment history. PSR ¶¶ 58–59. In that regard, the defendant may benefit from Occupational Education Programs, designed to help inmates acquire marketable skills in a wide variety of trades. He may also benefit from the Federal Prison Industries Program, which seeks to help prepare inmates for

successful reentry through job training. Each of these programs would help to stabilize the defendant and decrease the likelihood of recidivism.

      D. *The kinds of sentence legally available.*

The Court may sentence Mapp to any term of incarceration up to the fifteen-year statutory maximum.

      E. *The Sentencing Guidelines and policy statements.*

The Probation Department has scored sentencing guidelines at 70 to 87 months. The government concurs with this scoring of the guidelines. The government is unaware of any pertinent policy statements in the Guidelines.

      F. *The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.*

The Court's sentence must avoid unwarranted disparities among similarly situated defendants. According to the Sentencing Commission, a defendant sentenced under section 2K2.1 with a base level of 23 and a CHC of IV received an average length of sentence of 66 months and a median length of 70 months. A sentence of 57 months in the instant case would avoid any sentencing disparities.

      G. *The need for restitution.*

The parties agree that restitution is not applicable in this case.

### III. CONCLUSION

Corey Mapp poses a meaningful danger to the community. Given his behavior in the charged incident, coupled with his participation in other violent criminal offenses, his criminal history, and his perpetual inability to conform his conduct to the dictates of the law, there is only one sentencing alternative: a significant custodial sentence. Considering the §3553(a) factors, the government requests that the Court sentence Corey Mapp to 57 months' imprisonment.

Respectfully Submitted,

JEROME F. GORGON
United States Attorney

*/s Barbara Lanning*
Barbara Lanning (P79186)
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-9103
barbara.lanning@usdoj.gov

Dated: November 28, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2025, I electronically filed the foregoing memorandum with the Clerk of the Court using the ECF system, which will send notification of such filing to Mohammed Nasser, Attorney for Defendant Corey Mapp.

*s/ Barbara Lanning*
Barbara Lanning
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Phone: (313) 226-9103
barbara.lanning@usdoj.gov
P79186